ELIZABETH A. PIERCE ET AL. *v.* JOHNS-
MANVILLE SALES CORPORATION ET AL.

[No. 7, September Term, 1982.]

*Decided September 7, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*John T. Enoch* and *John Amato, IV,* with whom were *Goodman, Meagher & Enoch* on the brief, for appellants.

*F. Ford Loker,* with whom were *Robert E. Scott, Jr., Daniel W. Whitney* and *Semmes, Bowen & Semmes, Donald A. Krach* and *Niles, Barton & Wilmer, Michael B. Mann* and *Merriman & Mann, James R. Eyler* and *Miles & Stockbridge, H. Emslie Parks* and *Wright & Parks* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

This case primarily concerns an application of Maryland Code (1974, 1980 Repl.Vol.) § 5-101 of the Courts and Judicial Proceedings Article, a statute of limitations that requires a civil action to be filed within three years from the date it accrues (the three year statute of limitations). More particularly, it concerns the time at which a cause of action accrues when exposure to asbestos initially results in the manifestation of asbestosis, for which no tort recovery was sought, and subsequently results in the manifestation of lung cancer, which, on the basis of the record before us in this summary judgment proceeding, is a separate, distinct,

latent disease. Thus, the central question here is whether a cause of action for damages resulting from lung cancer accrues at the time asbestosis, allegedly caused by exposure to asbestos, is manifested or at a subsequent time, when lung cancer, allegedly caused by the same asbestos exposure, is manifested. Stated another way, the question is whether a person should be barred from recovery for the harm resulting from lung cancer caused by asbestos exposure solely because that person previously developed asbestosis, a separate and distinct disease, notwithstanding the fact that no tort recovery was sought for the harm resulting from asbestosis.

Charles H. Pierce (Pierce) was employed as an insulation mechanic by the Wallace and Gale Company (Wallace) in Baltimore from 1949 until 1973. During that time, he worked with and was exposed to asbestos and asbestos products manufactured or distributed by the respondents, Johns-Manville Sales Corporation and others (Johns-Manville).

Having learned that his stepfather's death in 1968 had been caused by asbestosis, Pierce sought medical attention, and after x-rays were taken, was advised that there was no evidence of asbestosis. In 1969 or 1970, Pierce began to complain of chest pains, but did not then seek medical attention. In 1971, chest x-rays were taken that revealed "scars in both lungs probably related to asbestos exposure." Nonetheless, Pierce continued his employment.

Early in 1973, as a result of severe chest pains, Pierce consulted a lung specialist who diagnosed his condition as asbestosis of the lungs caused by exposure to asbestos.[1] He was advised that he was suffering from asbestosis and that

---

1. In an affidavit, Dr. Russell S. Fisher, Chief Medical Examiner for the State of Maryland, said:

"The disease of asbestosis is one which affects the lungs of individuals exposed to the mineral asbestos. The main feature of the disease is that the lungs of the affected individual become scarred and that the normal lung tissue is converted into fibrotic tissue which prevents the lungs from functioning normally. A major effect of this action is to seriously impair an individual's ability to breathe normally. The disease in a particular individual can

he ran the risk of developing lung cancer even if there was no further exposure to asbestos.[2]

On 14 February 1973, Pierce filed a claim with the Maryland Workmen's Compensation Commission (Commission), alleging that he had developed asbestosis as a result of his employment with Wallace. On 2 March 1973, in order to avoid further asbestos exposure, Pierce left his job with Wallace and obtained an office job with a different company where he worked until 8 November 1979.

On 27 June 1973, the Medical Board for Occupational Diseases determined that Pierce "did sustain an occupational disease, namely pulmonary asbestosis," and that he

---

become progressively worse, even though that individual may no longer be exposed to the causative agent, asbestos.

"Nevertheless, if the asbestosis of a particular individual is not seriously advanced, that individual may continue to survive with a relatively normal life. Even in a more advanced stage, though an individual may not be able to continue to do active physical work, the individual can nevertheless survive to an age which is close to a normal life expectancy."

We note that asbestosis generally has a latent period of 10 to 25 years between initial exposure and apparent effect. Wilson v. Johns-Manville Sales Corp., 684 F.2d 111, 115 n.21 (D.C.Cir. 1982); Keene Corp. v. Insurance Co. of N.Am., 667 F.2d 1034, 1040 n.9 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644 (1982); Borel v. Fibreboard Paper Prods. Corp., 493 F.2d 1076, 1083 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127 (1974). *See* I. Selikoff & D. Lee, *Asbestos and Disease* 205 (1978); Selikoff, Churg, & Hammond, *The Occurrence of Asbestosis Among Insulation Workers,* 132 Ann.New York Acad.Sci. 139 (1965).

2. In an affidavit, Dr. M. Isabel MacGregor, Instructor in Medicine, The Johns Hopkins School of Medicine, Baltimore, Maryland, said:

"It is well known that asbestosis is associated with an increased risk of lung cancer and malignant mesothelioma."

The only evidence in this record indicating the degree of correlation between the development of asbestosis and the subsequent development of lung cancer was one study, adduced by Johns-Manville, that estimated that 17.8% of asbestosis sufferers subsequently developed lung cancer. *Annual Report of Chief Inspector of Factories for Year 1955,* London: Her Majesty's Stationery Office, 1956, 206, *quoted in* Selikoff, *Asbestos Exposure and Neoplasia,* 188 J.Am.Med.A. 22 (1965), *reprinted in* 16 The Asbestos Worker, Nov. 1964, at 5.

Additionally, we note that there is at least one other study in which it is estimated that 15% of asbestosis sufferers later develop pleural mesothelioma, a form of lung cancer. Wilson, 684 F.2d at 120 n.45. *See* Selikoff, Churg, & Hammond, *Relation Between Exposure to Asbestos and Mesothelioma,* 272 New Eng.J.Med. 560, 662 (1965).

had a 25% permanent partial disability. On 16 October 1973, the Commission determined that Pierce had suffered a 50% permanent partial disability resulting from asbestosis.

Pierce continued to suffer chest pains and shortness of breath and noted the onset of a cough. In December 1974, hospital tests again indicated that Pierce suffered from asbestosis. However, both the hospital pathology report and the report of the attending physician indicated that no evidence of lung cancer was present.

Although Pierce's previous symptoms persisted, he was reasonably well until October 1979 when he developed increasing shortness of breath occurring even at rest, a low-grade fever, and recurrent episodes of coughing. Lung cancer, related to the prior asbestos exposure, was diagnosed for the first time on 10 November 1979.[3] Pierce died on 25 January 1980. The cause of death was adenocarcinoma of the lung — a form of lung cancer.[4]

---

3. We note that while asbestosis generally has a latent period of 10 to 25 years between initial exposure and apparent effect, even longer periods of time may pass before mesothelioma or lung cancer manifests itself. Wilson, 684 F.2d at 115 n.21; Keene Corp., 667 F.2d at 1040 n.9; Borel, 493 F.2d at 1083. See I. Selikoff & D. Lee, *Asbestos and Disease* 205, 262-63 (1978); Selikoff, Churg, & Hammond, *The Occurrence of Asbestosis Among Insulation Workers,* 132 Ann.New York Acad.Sci. 139 (1965).

4. In his affidavit, Dr. Fisher further stated:

"The diseases of mesothelioma and lung cancer are also associated with prior exposure to asbestos by inhalation. Lung cancer is a malignant disease that involves the cells found within the substance of the lung and the airways of the lung. It is a progressive disease which nearly always kills the victim within a year of its diagnosis, in the inoperable state. The duration of the developmental process of lung cancer from inception to gross clinical manifestation cannot be stated with absolute certainty but modern medical opinion indicates this time lag to be of the order of months to a year or two at the extreme.

"*This kind of disease process is entirely different from the disease process involved with asbestosis,* though they both may be associated with an individual's exposure to the mineral asbestos.

"*It is a medically accepted fact that an individual who has been diagnosed with the disease of asbestosis will not inevitably contract either of the cancers mentioned above.* It is also true that individuals who have been exposed to asbestos and who develop lung cancer or mesothelioma, as a result of such exposure, may well not have significant asbestosis. These two situations are possible because, *although all three diseases are associated with the inhalation of asbestos fibers, there is at the present time no medi-*

On 13 March 1980, in the Circuit Court for Baltimore County, Elizabeth Pierce, in both her capacity as personal representative of Pierce's estate and as his widow, filed a suit, including a survival action [5] and a wrongful death action,[6] against Johns-Manville, and others, based on negligence and strict liability. Damages were not sought for any harm resulting from Pierce's asbestosis. Damages were sought solely for the harm resulting from Pierce's lung cancer. Johns-Manville filed a motion for summary judgment based on the grounds that the survival action was barred by the three year statute of limitations and, therefore, that a condition precedent to filing a viable wrongful death action had not been fulfilled because Pierce himself would not have been entitled to maintain an action if death had not ensued.

With respect to the survival action, the trial court determined that the cause of action accrued in April 1973, the time at which asbestosis was manifested, and concluded that

---

*cally accepted link between the development of malignant diseases and the development of asbestosis."* (Emphasis added.)

**5.** Md. Code (1974) § 7-401 (x) of the Estates and Trusts Article provides in pertinent part:

"[A personal representative] may prosecute ... claims, or proceedings ... for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted."

**6.** Md. Code (1974, 1980 Repl.Vol.) § 3-902 (a) of the Courts and Judicial Proceedings Article provides in pertinent part:

"An action may be maintained against a person whose wrongful act causes the death of another."

Md. Code (1974, 1980 Repl.Vol.) § 3-901 (e) of the Courts and Judicial Proceedings Article provides in pertinent part:

" 'Wrongful act' means an act, neglect, or default including a felonious act *which would have entitled the party injured to maintain an action and recover damages if death had not ensued."* (Emphasis added.)

Md. Code (1974, 1980 Repl.Vol.) § 3-904 (f) of the Courts and Judicial Proceedings Article provides in pertinent part:

"An action under this subtitle shall be filed *within three years after the death of the injured person."* (Emphasis added.)

this cause of action was barred by the three year statute of limitations. In addition, the trial court concluded that the wrongful death action was also barred. On 15 December 1981, the trial court entered an order granting the motion for summary judgment in favor of all but two of the defendants. Pursuant to Maryland Rule 605 (a), the trial court additionally determined that there was no just reason for delay and expressly directed the entry of an appropriate final judgment.

Elizabeth Pierce filed an appeal to the Court of Special Appeals. While that appeal was pending, she filed a petition for a writ of certiorari that we granted before consideration by the Court of Special Appeals. We shall reverse the judgment of the trial court.

Here, with respect to the survival action, Elizabeth Pierce contends that the "discovery rule" — that a cause of action accrues when a person discovers, or through reasonable care and diligence should have discovered, the nature and cause of a harm — is applicable here. She maintains that because of the latent nature of Pierce's disease, the cause of action for damages resulting from lung cancer did not accrue until Pierce knew, or reasonably should have known, that he had developed lung cancer. She points out that although lung cancer and asbestosis are both associated with exposure to asbestos, the diseases are separate and distinct; that there is no medically-accepted link between the development of asbestosis and the development of lung cancer; that consequently lung cancer is not a maturation of asbestosis; and that in the absence of a medical link there is only a possibility that a person suffering from asbestosis will develop lung cancer. She asserts that at the time his asbestosis manifested itself, Pierce could not have discovered the existence of his lung cancer because it had not yet developed. She further asserts that at that time he could not have ascertained that he would develop lung cancer. She claims, therefore, that the earliest time at which Pierce's lung cancer reasonably should have been discovered was 10 November 1979 when his lung cancer manifested itself and

was diagnosed for the first time. She concludes that under the discovery rule the estate's cause of action is not barred by the statute of limitations.

Johns-Manville contends that because the asbestos exposure caused both Pierce's asbestosis and lung cancer, an indivisible cause of action arose for all of the harm resulting from both asbestosis and lung cancer. It asserts that this indivisible cause of action accrued early in 1973 when Pierce discovered his asbestosis because it was at that time that Pierce discovered an initial harm resulting from the asbestos exposure, even though he did not then know the full extent of that harm. It further asserts that at that time, Pierce was obligated to sue and to seek recovery for all claims, including future damages.

Johns-Manville maintains that the development of Pierce's lung cancer was nothing more than a maturation of his harm — pulmonary disease. It further contends that to construe the discovery rule so that the cause of action accrued at the time Pierce discovered the extent of his harm, rather than at the time he discovered the existence of the initial harm resulting from the asbestos exposure, would, in essence, constitute an adoption of the "maturation of harm rule" — that the statute of limitations does not begin to run until the maturation of damages — a rule consistently rejected by this Court. It concludes that under the discovery rule, the cause of action is barred by the statute of limitations. In essence, Johns-Manville argues that Pierce would have been barred from recovery for the harm resulting from lung cancer caused by asbestos exposure solely because Pierce had previously developed asbestosis, notwithstanding the fact that Pierce had never sought tort recovery for the harm resulting from the asbestosis. We disagree.

Maryland has recently held the discovery rule to be applicable generally in all actions. *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677, 680 (1981). Under that rule, a cause of action accrues for a latent disease when the claimant knew or reasonably should have known of the nature and cause of the harm. *Harig v. Johns-Manville Prods.*

*Corp.,* 284 Md. 70, 83, 394 A.2d 299, 306 (1978). With respect to latent diseases, this Court has recognized that it is unreasonable and inequitable for injured persons to be "charged with slumbering on rights they were unable to ascertain," *Harig,* 284 Md. at 83, 394 A.2d at 306, and that unless the discovery rule were adopted, an injured person's right to recover for many latent and insidious diseases would be nullified. *Harig,* 284 Md. at 79-80, 394 A.2d at 304-05. Thus, the basic rationale underlying the adoption of the discovery rule was that it is unfair to bar recovery for a harm that a reasonably diligent person would be unable to discover. *Poffenberger,* 290 Md. at 635, 431 A.2d at 679-80; *Harig,* 284 Md. at 81-83, 394 A.2d at 305-06.

Here the record shows that asbestosis and lung cancer are separate and distinct latent diseases that are not medically linked. If Pierce had developed lung cancer without previously having developed asbestosis, there can be no question but that under the discovery rule, recovery would not have been barred by the statute of limitations. But here the question is whether a right to recover should now be barred solely because Pierce did in fact develop asbestosis, a harm for which tort recovery has never been sought. We shall determine this question with regard to the rationale underlying statutes of limitation.

The relevant statute of limitation here is Maryland Code (1974, 1980 Repl.Vol.) § 5-101 of the Courts and Judicial Proceedings Article. That section provides:

> "A civil action at law shall be filed within three years from the date it *accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced." (Emphasis added.)

Because the term "accrues" is not defined in the statute, the question of when a cause of action accrues is left to judicial determination. *Poffenberger,* 290 Md. at 633, 431 A.2d at 679; *Harig,* 284 Md. at 75, 394 A.2d at 302. "Statutes of limitation find their justification in necessity and

convenience rather than in logic. They represent expedients, rather than principles." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142 (1945). Thus, the determination of when a cause of action accrues is properly made with reference to the rationale underlying statutes of limitation. *Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 684, 404 A.2d 1064, 1069 (1979); *Harig,* 284 Md. at 75, 394 A.2d at 302.

The adoption of statutes of limitation reflects a policy decision regarding what constitutes an adequate period of time for a person of reasonable diligence to pursue a claim. Such statutes are designed to balance the competing interests of each of the potential parties as well as the societal interests involved. Thus, one of the purposes of such statutes is to assure fairness to a potential defendant by providing a certain degree of repose. This is accomplished by encouraging promptness in prosecuting actions; suppressing stale or fraudulent claims; avoiding inconvenience that may stem from delay, such as loss of evidence, fading of memories, and disappearance of witnesses; and providing the ability to plan for the future without the uncertainty inherent in potential liability. Another basic purpose is to prevent unfairness to potential plaintiffs exercising reasonable diligence in pursuing a claim. Still another purpose is to promote judicial economy. *Goldstein,* 285 Md. at 684, 404 A.2d at 1069; *Harig,* 284 Md. at 75-76, 394 A.2d at 302. *See Wilson v. Johns-Manville Sales Corp.,* 684 F.2d 111, 118-19 (D.C.Cir. 1982).

The rationale underlying statutes of limitation supports the conclusion that having never sought tort recovery for the harm resulting from asbestosis, recovery for the harm resulting from lung cancer should not be barred and that, therefore, a cause of action accrued at the time that Pierce knew or reasonably should have known of the existence of lung cancer. Manifestly, the principle of repose would be fostered to some degree by a determination that the cause of action accrued at the time of the manifestation of asbestosis. Encouragement of prompt prosecution of actions, sup-

pression of stale or fraudulent claims, and provision for the ability to plan for the future without the uncertainty inherent in potential liability would be promoted. However, the avoidance of unnecessary delay, including the avoidance of the loss of evidence, disappearance of witnesses, and the fading of memories, would not necessarily be achieved by such a determination because evidence relating to the central issues in a latent disease case — the existence of the disease, its proximate cause, and the resultant damage — "tends to develop, rather than disappear, as time passes." *Wilson,* 684 F.2d at 119.

Moreover, unless it is determined that a cause of action accrued at the time Pierce's lung cancer manifested itself, substantial unfairness would result. In Maryland, recovery of damages based on future consequences of an injury may be had only if such consequences are reasonably probable or reasonably certain. Such damages cannot be recovered if future consequences are "mere possibilities." Probability exists when there is more evidence in favor of a proposition than against it (a greater than 50% chance that a future consequence will occur). Mere possibility exists when the evidence is anything less. *Davidson v. Miller,* 276 Md. 54, 62, 344 A.2d 422, 427-28 (1975). Thus, if suit had been filed within three years of the manifestation of Pierce's asbestosis, it is highly likely that Johns-Manville would have successfully defended on the ground that the chance that Pierce would develop lung cancer was too speculative [7] to support a damage award.[8] Under such circumstances, unless Pierce had filed suit within three years of the manifestation

---

7. As set forth in n.2, although there was evidence to show that asbestosis is associated with an increased risk of lung cancer, the only evidence in this record indicating the degree of correlation between the development of asbestosis and the subsequent development of lung cancer was one study that estimated that 17.8% of asbestosis sufferers subsequently developed lung cancer. Additionally, as we noted in n.2, there is at least one other study in which it was estimated that 15% of asbestosis sufferers later develop pleural mesothelioma, a form of lung cancer.

8. Indeed, recently Johns-Manville did in fact successfully defend against recovery for damages for lung cancer on the ground, among others, that the chance that the plaintiffs, asbestosis sufferers, might develop lung cancer was too speculative to support a damage award. Schmidt v. Johns-Manville Corp., Civ.No. H-80-3339 (D.Md. 1983) and Wright v. Johns-Manville Corp., Civ.No. H-80-3358 (D.Md. 1983).

of his asbestosis and his lung cancer had manifested itself during the course of that suit, Pierce's right to recover for the latent disease of lung cancer would, as a practical matter, be nullified. *Wilson,* 684 F.2d at 120.

Finally, a rule that a cause of action accrued at the time Pierce's lung cancer manifested itself would promote judicial efficiency. As stated in *Wilson v. Johns-Manville Sales Corporation,* 684 F.2d 111, 120 (D.C.Cir. 1982):

> "Upon diagnosis of an initial illness, such as asbestosis, the injured party may not need or desire judicial relief. Other sources, such as workers' compensation or private insurance, may provide adequate recompense for the initial ailment. If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequence of a wait-and-see approach to the commencement of litigation may be too severe to risk. Moreover, a plaintiff's representative in such a case may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial."

In sum, a determination that a cause of action for lung cancer accrues when lung cancer manifests itself would result in some degree of infringement of the right to repose. On the other hand, a determination that a cause of action for lung cancer accrues when asbestosis manifests itself would result in depriving a reasonably diligent person of an opportunity to recover for harm resulting from a latent disease, the existence of which was not known and could not have been known. Moreover, it would result in the imposition of an unnecessary burden upon the judicial system. In our view, the partial infringement of the right to repose is far

outweighed by the unfairness of barring a reasonably diligent person from recovery for a latent disease, and by a needless interference with the efficient operation of the judicial system. Under these circumstances, we now hold that when exposure to asbestos initially results in the manifestation of asbestosis, and subsequently results in the manifestation of lung cancer, a separate, distinct latent disease, and no tort recovery has been sought for the harm resulting from asbestosis, a cause of action for the harm resulting from lung cancer accrues when lung cancer is or reasonably should have been discovered.[9] Such a result is consonant with the purposes of both the discovery rule applicable in Maryland, and the three year statute of limitations. It affords a reasonably diligent person, who is unable to discover the existence of a latent disease, the full benefit of the statutory period in which to file suit, retains some degree of protection of a potential defendant's right to repose, and promotes judicial efficiency. Courts in some few jurisdictions that have considered the same or similar questions have reached the same result. *E.g., Wilson,* 684 F.2d at 120-21; *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 574 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732 (1977); *Fearson v. Johns-Manville Sales,* 525 F.Supp. 671, 673-74 (D.D.C. 1981); *Martinez-Ferrer v. Richardson-Merrell, Inc.,* 105 Cal.App.3d 316, 326-27, 164 Cal.Rptr. 591, 596-97 (1980). *But see, e.g., Staiano v. Johns-Manville Corp.,* 304 Pa.Super. 280, 296, 450 A.2d 681, 688-89 (1982).

---

**9.** Johns-Manville has characterized this construction of the statute as the "maturation of harm" rule, a rule that this Court has previously refused to adopt. *See, e.g.,* Poffenberger, 290 Md. at 634 n.2, 431 A.2d at 679 n.2; Goldstein, 285 Md. at 685 n.3, 404 A.2d at 1069 n.3; Watson v. Dorsey, 265 Md. 509, 512, 290 A.2d 530, 533 (1972). However, our decision here is consistent with those cases refusing to adopt the maturation of harm rule because the cause of action resulting from the lung cancer accrues at the time of the lung cancer's manifestation, rather than at the time of its maturation.

Johns-Manville additionally has characterized this construction as rejecting the rule that one wrong gives rise to an indivisible cause of action that cannot be split so that only one suit can be brought, a rule to which this Court has previously adhered. *E.g.,* Frontier Van Lines v. Maryland Bank & Trust, 274 Md. 621, 625, 336 A.2d 778, 780 (1975); In re Carlin's Estate, 212 Md. 526, 532-33, 129 A.2d 827, 831 (1957). However, our decision here is consistent with those cases because, as a practical matter, if no tort

Here the record shows that Pierce's exposure to asbestos resulted in the manifestation of asbestosis in early 1973. However, no tort recovery for that harm was ever sought. Although Pierce's previous symptoms persisted, he was reasonably well until October 1979 when he developed additional symptoms of acute distress. Pierce made a diligent effort to ascertain his condition. On 10 November 1979, Pierce was diagnosed as having lung cancer caused by his exposure to asbestos. On the basis of the record before us in this summary judgment proceeding, a cause of action for harm resulting from lung cancer accrued on that date. Tort recovery for lung cancer was sought in a suit filed 13 March 1980. Manifestly, the survival action in that suit was not barred by Maryland Code (1974, 1980 Repl.Vol.) § 5-101 of the Courts and Judicial Proceedings Article, the three year statute of limitations. Moreover, under these circumstances, Pierce, himself, would have been entitled to maintain an action if death had not ensued. Thus, even if we assume that such entitlement is a condition precedent to a wrongful death action, the wrongful death action here would not be barred. Both the survival and wrongful death actions were timely. Accordingly, we shall reverse the judgment of the trial court.

> *Judgment of the Circuit Court for Baltimore County reversed.*
> *Case remanded to that Court for further proceedings.*
> *Costs to be paid by respondents.*

---

recovery for damages resulting from asbestosis is sought, there will be only a single action for damages resulting from asbestos exposure.