533 A.2d 1294

**Neill S. COOPER et al.**

v.

**Stanley E. HARTMAN et ux.**

**No. 45, Sept. Term, 1987.**

Court of Appeals of Maryland.

Dec. 9, 1987.

Motion for Reconsideration Denied Jan. 12, 1988.

George J. Goldsborough, Jr. (Goldsborough & Tolley, on brief), Easton, for appellants.

Daniel M. Clements (Laurence A. Marder, Israelson, Salsbury, Clements & Bekman, on brief), Baltimore, for appellees.

E. Fremont Magee, H. Mark Stichel, Dawanna M. Cobb and Piper & Marbury, on the brief, for amicus curiae Chesapeake Physicians, P.A.

Argued before MURPHY, C.J., COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ. and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (Retired), Specially Assigned.

ADKINS, Judge.

In *Weimer v. Hetrick*, 309 Md. 536, 525 A.2d 643 (1987), we held that the "loss of a substantial chance of survival"

doctrine did not apply to a wrongful death action under Md.Code (1984 Repl.Vol., 1987 Cum.Supp.) Cts. & Jud.Proc. Art. § 3–904. We explained that neither *Thomas v. Corso*, 265 Md. 84, 288 A.2d 379 (1972), nor *Hicks v. United States*, 368 F.2d 626 (4th Cir.1966), "created ... a new tort ... [or] an additional basis for determination of damages in an existing tort" on the basis of that doctrine. *Weimer*, 309 Md. at 553, 525 A.2d at 652. We left for "another day" the question of whether Judge Sobeloff's language in *Hicks* (368 F.2d at 632) "will prove to be an augury of a burgeoning new tort or introduce a new factor for consideration of damages in tort cases producing injury or death...." *Id.*

That day has not yet come. The case now before us, tried long before our *Weimer*, went to the jury on instructions that included one based on the "loss of a chance" doctrine. But because the evidence was insufficient to support that instruction, even assuming the doctrine exists in Maryland, we again decline to decide whether Maryland recognizes the doctrine. We explain.

On 18 February 1978 respondent Stanley Hartman fell and fractured his right hip. Petitioner Dr. Neill Cooper operated on the hip in an effort to repair the damage. The surgery appeared to be successful; Hartman was discharged from the hospital on 16 March, still under the care of Dr. Cooper.

A short time after his discharge, Hartman began showing symptoms of infection in his right hip. On 28 March 1978, during an outpatient consultation with Dr. Cooper, Hartman complained of persistent pain and swelling in his right leg. Dr. Cooper, apparently suspecting infection, prescribed an antibiotic.

The antibiotic had little or no effect on Hartman's pain and swelling, and his condition continued to deteriorate. On 26 April 1978 Hartman again consulted Dr. Cooper, this time complaining of throbbing pain in his right thigh and recurrent episodes of fever. Despite these symptoms Dr. Cooper did not take any serious steps to determine the

cause of the swelling until 26 May 1978 when he administered a blood test. The test revealed a slightly elevated white blood count and an increased sedimentation rate, two indicators of infection. Despite these warning signals the doctor took no further action to diagnose or treat the infection until 27 June 1978 when he aspirated the wound and obtained bacterial cultures for testing. Tests of the cultures, however, showed no sign of bacterial infection. Over the next few months, Hartman's symptoms continued but Dr. Cooper failed to abate the infection.

Finally in November 1978, Hartman was admitted to Johns Hopkins Hospital where he was diagnosed as suffering from osteomyelitis (an infection of the bone) in his right leg. During the course of treatment, Hartman underwent five successive surgeries involving removal of bone from his right leg. The end result was a two-inch shortening of the leg.

Hartman and his wife (the Hartmans) filed a medical malpractice claim against Dr. Cooper and other health care providers (hereinafter collectively referred to as Dr. Cooper). Dr. Cooper was victorious in the arbitration proceeding, as he was in a subsequent trial in the Circuit Court for Anne Arundel County. The judgment in his favor, however, was reversed. *Hartman v. Cooper*, 59 Md.App. 154, 474 A.2d 959 (1984). At a new trial the Hartmans obtained a $210,000 judgment against Dr. Cooper. The Court of Special Appeals affirmed in *Cooper v. Hartman*, No. 1615, September Term, 1985 (Md.App., filed 6 October 1986) (per curiam). We granted *certiorari*.

We did so because at the second trial the Hartmans asserted that Dr. Cooper's post-surgery negligence—that is negligence in treating the infection—had caused Hartman to lose a substantial chance of attaining a better recovery than in fact occurred. On the basis of that theory and over

Dr. Cooper's objections,[1] the Circuit Court for Anne Arundel County (Goudy, J.) instructed that:

> In a civil case such as this people are presumed to have acted reasonably and that's why the burden of proof is by a preponderance of the evidence on the party asserting the claim to prove they didn't. That's a general statement of law in any negligence case.

> \*     \*     \*     \*     \*     \*

And with regard to causation Judge Goudy gave the following charge:

> You are instructed that when a physician's negligent act, and I'm not suggesting it was negligent, or that it was or wasn't—when a physician's negligent act or negligent failure to act has terminated or lessen[ed] a person's chance of recovery the physician will not be heard to raise conjectures as to the measures of the chances that he has taken away. If there was any substantial possibility in this case of recovery or stopping or arresting the infection and the doctor negligently destroyed that chance, it is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened had the treatment not been negligent.

The latter instruction, in effect, required the jury to apply the doctrine of "loss of substantial chance of survival," or

---

**1.** In support of a motion to dismiss, the Hartmans argue that the issue regarding the correctness of the causation charge was not preserved for appeal because the record extract fails to show Dr. Cooper's exception to the instruction, as required by Md. Rule 828. We find no merit to this contention for several reasons. First, the Hartmans have failed to raise this non-preservation issue in a cross-petition for *certiorari.* Thus, the issue is not before us and we need not address it. *See* Rule 813 a and *Frank v. Storer,* 308 Md. 194, 207 n. 7, 517 A.2d 1098, 11ᴦ�437 n. 7 (1986). Second, although the Rule 828 b.1.(b) requirements are mandatory, the decision whether to impose sanctions is discretionary. *Wyndham v. Haines,* 305 Md. 269, 277 n. 7, 503 A.2d 719, 724 n. 7 (1986). We would decline to impose the sanction of dismissal for this minor infraction if the issue were before us. Moreover, the record shows that Dr. Cooper's attorney did object to the instruction and, therefore, properly preserved the issue for appeal. Md.Rule 828 c. The motion to dismiss is denied.

more properly, on the facts of this case, "loss of a substantial chance of recovery." The instruction was based upon Judge Soboloff's language in *Hicks v. United States*, 368 F.2d 626, 632 (4th Cir.1966), which we quoted in *Thomas v. Corso*, 265 Md. 84, 101–102, 288 A.2d 379, 389–390 (1972). Apparently misreading *Thomas*, the trial court erroneously concluded that we had adopted the loss of substantial chance doctrine in Maryland.[2] The Court of Special Appeals, citing *Thomas*, found "no error in the trial court's interpretation or application of the 'substantial possibility' standard. . . ." *Cooper v. Hartman*, No. 1615, September Term, 1985, slip op. at 3–4 (Md.App. filed 6 October 1986) (per curiam). For the reasons we now give, both courts were in error.

The doctrine of "loss of substantial chance of survival," as it is often called, has received a great deal of attention recently from commentators.[3] This rule has been applied primarily in medical malpractice cases where the patient, already plagued by a pre-existing illness, injury or condition, receives medical treatment that falls below the standard of care. Annotation, *Medical Malpractice: "Loss of Chance" Causality*, 54 A.L.R.4th 10, 17–18 (1987). In

---

**2.** As stated earlier in our discussion, we did not adopt the doctrine of "loss of substantial chance of survival" in *Thomas v. Corso, supra. See* discussion at p. 261, *supra.*

**3.** *See* Andel, "Medical Malpractice: The Right to Recover for the Loss of a Chance of Survival," 12 Pepperdine L.Rev. 973 (1985); Bradt & Gathmann, "Recovery for the Value of a Chance in Medical Negligence Cases: Bringing Minnesota's Standard of Causation Up to Date," 12 Wm. Mitchell L.Rev. 459 (1986); King, "Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences," 90 Yale L.J. 1353 (1981); Smith, "Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases," 65 B.U.L.Rev. 275 (1985) (discussing the advantages of the causation approach); Comment, "Medical Malpractice, The Increased Risk Rule: Establish.ng 'Probable' Causation Through Mere Possibility," 27 Ariz.L.Rev. 257 (1985); Annotation, *Medical Malpractice: "Loss of Chance" Causality*, 54 A.L.R.4th 10 (1987). In addition an interesting treatment of the subject is found in *Hotson v. East Berkshire Health Authority* [1987] 2 All E.R. 909 (House of Lords).

these cases under traditional rules, plaintiffs often encounter problems with proof of causation and are unable to demonstrate a better than even chance of recovery, absent the malpractice. King, "Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences," 90 Yale L.J. 1353, 1363–1364 (1981). And under traditional approaches any injury suffered by the patient "would not be compensable because it did not appear more likely than not that the patient would have survived with proper care." *Id.*

As a direct consequence of the results occasioned by the traditional approach, some courts have adopted rules designed to alleviate what they view as inequity. The various courts that have adopted these rules, however, have taken different approaches. Some have simply relaxed the standards regarding causation and allowed full compensation for an injury or death where the plaintiff demonstrated less than a 50% chance of recovery.[4] Others have left the traditional rules of causation intact but have viewed the loss of a chance as a way of approaching damages.[5] *See Weimer v. Hetrick*, 309 Md. 536, 556, 525 A.2d 643, 653 (1987) (McAuliffe, J., concurring) ("a claim under that theory [loss of substantial chance of survival] does not involve the creation of a new tort, but rather involves a redefinition of damages involved in the claim").

Professor King in his recent law review article provides a succinct discussion of the damage approach:

---

**4.** *Waffen v. United States Dep't of Health & Human Services,* 799 F.2d 911, 922–923 (4th Cir.1986); *Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 606–609, 688 P.2d 605, 615–616 (1984); *Sharp v. Kaiser Found. Health Plan of Colo.,* 710 P.2d 1153, 1155–1156 (Colo. App.1985); *Roberson v. Counselman,* 235 Kan. 1006, 1013–1021, 686 P.2d 149, 158–160 (1984); *Evers v. Dollinger,* 95 N.J. 399, 413–419, 471 A.2d 405, 412–415 (1984); *Hamil v. Bashline,* 481 Pa. 256, 269–274, 392 A.2d 1280, 1288–1289 (1978).

**5.** *DeBurkarte v. Louvar,* 393 N.W.2d 131, 137 (Iowa 1986); *McKellips v. Saint Francis Hosp., Inc.,* 741 P.2d 467, 476–477 & n. 25 (Okla.1987); *Herskovits v. Group Health Coop. of Puget Sound,* 99 Wash.2d 609, 634, 664 P.2d 474, 487 (1983) (Pearson, J., concurring).

A better method of valuation would measure a compensable chance as the percentage probability by which the defendant's tortious conduct diminished the likelihood of achieving some more favorable outcome. Under this approach, the trier of fact would continue to make the valuation, but would do so within specific guidelines and parameters set by the court.

To illustrate, consider a patient who suffers a heart attack and dies as a result. Assume that the defendant-physician negligently misdiagnosed the patient's condition, but that the patient would have had only a 40% chance of survival even with a timely diagnosis and proper care. Regardless of whether it could be said that the defendant caused the decedent's death, he caused the loss of a chance, and that chance-interest should be completely redressed in its own right. Under the proposed rule, the plaintiff's compensation for the loss of the victim's chance of surviving the heart attack would be 40% of the compensable value of the victim's life had he survived (including what his earning capacity would otherwise have been in the years following death). The value placed on the patient's life would reflect such factors as his age, health, and earning potential, including the fact that he had suffered the heart attack and the assumption that he had survived it. The 40% computation would be applied to the base figure.

*King, supra,* at 1382. Thus, under Professor King's approach, an injured patient can only recover damages for the lost chance.

Respondents argue that the "loss of substantial chance doctrine" exists in Maryland and should be applied here, either as a new cause of action (the causation approach) or, alternatively, as a method of determining damages for a traditional tort (the damage approach). As we have already observed, we need not and do not decide whether Maryland recognizes the doctrine in any form. That is so because even if we assume, *arguendo,* the existence of the doctrine,

the evidence in this case does not support its application under either approach.

The sufficiency of evidence necessary to establish the element of causation under the causation approach is best illustrated with reference to *Thompson v. Sun City Community Hosp., Inc.*, 141 Ariz. 597, 688 P.2d 605 (1984). In *Thompson* the court said that

> even if the evidence permits only a finding that the defendant's negligence increased the risk of harm or deprived plaintiff of some significant chance of survival or better recovery, it is left for the jury to decide whether there is a probability that defendant's negligence was a cause in fact of the injury.

*Thompson*, 141 Ariz. at 606, 688 P.2d at 614. The *Thompson* court acknowledged that it, in effect, "permit[ted] the case to go to the jury on the issue of causation with less definite evidence of probability than the ordinary tort case." *Id.* at 607, 688 P.2d at 615. But the court reiterated that the jury was to be "instructed that they must find for the defendant unless they find a *probability* that the defendant's negligence was a cause of plaintiff's injury." *Id.* at 607–608, 688 P.2d at 615–616 [emphasis in original].[6]

At trial Hartman presented testimony of two expert witnesses, Dr. Caplan and Dr. Weiland. Both testified that Dr. Cooper departed from the standard of care by failing to diagnose and treat the infection more promptly. As to causation, the testimony was somewhat less conclusive. Dr. Weiland testified as follows:

Q. Do you have an opinion, doctor, as to—to a reasonable medical probability as to whether or not there is a likelihood of a better result, that it's more probable than not that Mr. Hartman would have had a better result for

---

6. *See also, Sharp v. Kaiser Found. Health Plan of Colo.*, 710 P.2d 1153, 1155–1156 (Colo.App.1985); *Roberson v. Counselman*, 235 Kan. 1006, 1013–1021, 686 P.2d 149, 158–160 (1984); *Evers v. Dollinger*, 95 N.J. 399, 413–419, 471 A.2d 405, 412–415 (1984); *Hamil v. Bashline*, 481 Pa. 256, 269–274, 392 A.2d 1280, 1288–1289 (1978), applying the *Thompson* rule.

the union [of the bone] without the infection, or if it had been treated earlier?

\*　　\*　　\*　　\*　　\*　　\*

A. *I think that the chances are he would have had a much better result if the infection didn't occur in the first place,* but if it did occur, to be treated, diagnosed and treated earlier.

\*　　\*　　\*　　\*　　\*　　\*

Q. Do you have an opinion, doctor, as to whether or not, if it had been diagnosed in April of 1978, late April of 1978 by Dr. Cooper, for what ultimately it was determined to have been—whether or not it is possible that he may have been treated purely with antibiotics without the necessity of surgery?

\*　　\*　　\*　　\*　　\*　　\*

A. I think it's possible that he would have been treated with antibiotics and *it's possible the infection would have been cured then.* [Emphasis added.]

Dr. Caplan testified as follows:

Well, acute osteomyelitis is—is treated almost always with antibiotics, alone. *Once you have the infecting organism, you just treat [it] with prolonged, and it takes up to six weeks of high dose intravenous, usually, antibiotics and given that, you have an excellent chance of saving the bone with no subsequent surgery, and no loss of bone.*

\*　　\*　　\*　　\*　　\*　　\*

Q. And what's the importance of doing them over days rather than two months?

A. Well, if, for example, his infection was somewhere else, it's possible he could have died while we were waiting from the infection. The fact that it was in his bone meant that the only problem would be that he would suffer loss of bone, which is bad, but, I mean, *the longer you wait the less the chance that you can cure an infection and the earlier you treat an infection, the better the chance that you can completely cure it with-*

*out a lot of adjutant therapy, surgery, and a lot of other modalities that are now being used.* [Emphasis added.]

■ This evidence falls short of what is required under the *Thompson* standard. Dr. Weiland's testimony was that "its *possible* the infection would have been cured" if Hartman had been properly treated. Dr. Caplan, speaking generally about treatment of osteomyelitis, said that "you treat them [the infecting organisms] with ... antibiotics and given that, you have an excellent chance of saving the bone...."[7] The testimony failed to demonstrate that Hartman had a "substantial possibility" of a better result. And it was insufficient to permit any reasonable juror to find that Hartman had a probability of a good recovery. Thus, the loss of chance causation approach cannot be applied to this case.

■ As to the damage approach, the Hartmans have also failed to provide the requisite proof. The damage approach differs from the causation approach in that recovery under the former depends upon the quantitative measure of the lost chance. "It is well settled that compensatory damages must be proven with a reasonable degree of certainty and cannot be based upon speculation or mere conjecture." *Davidson v. Miller,* 276 Md. 54, 61–62, 344 A.2d 422, 427 (1975). When we apply this language to loss of chance damages, it is apparent the proof ordinarily must be based on quantitative measures.[8] But the evidence

---

7. Dr. Caplan's testimony should be given little weight since he spoke generally about treatment of osteomyelitis and did not assess Hartman's chances of a better result had he received proper treatment.

8. This proposition is further supported by the fact that most courts applying the loss of chance damage approach have done so in cases where the lost chance is expressed in terms of percentages. *See Mays v. United States,* 608 F.Supp. 1476, 1481–1483 (D.Colo.1985) (applying Colorado law) (expert testimony established that plaintiff's chances of survival reduced from 40% to 15% because of the malpractice); *DeBurkarte v. Louvar,* 393 N.W.2d 131, 137–138 (Iowa 1986) (expert testified that prior to the negligent acts and omissions plaintiff had

presented on behalf of the Hartmans failed to show with reasonable specificity what the extent of the lost chance was. Therefore, they cannot invoke the damage approach.

Since the instruction directed the jury to apply the doctrine, it was error because the evidence did not support it under either approach. The Hartmans, nevertheless, argue that the error was not prejudicial because the evidence was sufficient to permit the jury to find in their favor under traditional tort law. Alternatively, they suggest that we remand on the issue of damages only. But the error was prejudicial, and the case must be remanded as to all issues.

██ The traditional rule governing burden of proof as to causation in medical malpractice cases was recently stated in *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020 (1983). There, Judge Davidson said:

In Maryland, recovery of damages based on future consequences of an injury may be had only if such consequences are *reasonably probable* or *reasonably certain.* Such damages cannot be recovered if future consequences are "mere possibilities." *Probability exists when there is more evidence in favor of a proposition than against it (a greater than 50% chance that a future consequence will occur).* Mere possibility exists when the evidence is anything less.

*Id.* at 666, 464 A.2d at 1026 [citations omitted; emphasis added].

Thus, under the traditional rule of *Pierce* (assuming the loss of chance doctrine does not apply) the Hartmans shouldered the burden of proving that Hartman had a better than 50% chance of full recovery absent the malpractice. The instruction, however, did not make this point of law

between 50% and 80% chance of survival, but at the time of trial, her chances were zero); *McKellips v. Saint Francis Hosp., Inc.,* 741 P.2d 467, 476 (Okla.1987) (holding "that statistical evidence is not necessary to create a causation issue for the jury, [but that] statistical data relating to the extent of the decedent's chance of survival is necessary in determining the amount of damages recoverable after liability is shown").

clear to the jury. The critical portion of Judge Goudy's instruction provided:

When a physician's negligent act or negligent failure to act has terminated or lessen[ed] a person's chance of recovery *the physician will not be heard to raise conjectures as to the measures of the chances that he has taken away.* If there was any *substantial possibility* ... of recovery ... [he] is answerable. [Emphasis added.]

As we have seen, the *Pierce* court defined "possibility" as a less than 50% chance. 296 Md. at 666, 464 A.2d at 1026. It further stated that proof as to future consequences must be in terms of probabilities (greater than 50% chance) and not possibilities (less than 50% chance). The lower court's instruction in this case, however, directed the jury to find for the Hartmans if there was "any substantial possibility ... of recovery." This was in contravention of *Pierce*. In essence, the jury was instructed to find for the Hartmans even if it believed that absent the malpractice, Hartman had less than a 50% chance of complete recovery.

The Hartmans argue that the instructions, if read in their entirety, *Dean v. Redmiles*, 280 Md. 137, 162–163, 374 A.2d 329, 343 (1977), did not direct a finding in contravention of *Pierce*. In support of their argument, the Hartmans point out that the trial judge instructed the jury that it must adhere to the preponderance of the evidence standard. The argument is unpersuasive. Although the trial judge did instruct the jury generally on the burden of proof issue, the instruction on causation in effect permitted it to depart from the preponderance standard on the causation issue.

The instruction was erroneous and harmfully so. Since the error went to causation, it affected the jury's determination as to Dr. Cooper's liability. Therefore, we reverse and remand for a new trial on all issues.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF

THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. RESPONDENTS TO PAY THE COSTS.