Mary D. HARTNETT;  Joseph P. Hartnett, Plaintiffs–Appellants,

v.

SCHERING CORPORATION, Defendant–Appellee.

No. 92–2422.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1993.

Decided Aug. 26, 1993.

Peter M. Hartnett, Hartnett Law Office, Syracuse, NY, argued, for plaintiffs-appellants.

Linda Trummer–Napolitano, Law Offices of Henry R. Simon, White Plains, NY, argued (Henry R. Simon, on brief), for defendant-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

GEORGE ROSS ANDERSON, Jr., District Judge:

Mary and Joseph Hartnett appeal the district court's grant of summary judgment in their product liability action against Schering Corporation, a manufacturer of the drug Dienestrol (DEN). The district court granted summary judgment in favor of Schering, having found as a matter of law that the Hartnetts failed to bring their action within the three year period mandated by the Maryland statute of limitations governing civil actions. 806 F.Supp. 1231. We affirm.

## FACTS

In February 1960, Kathleen Dwyer, pregnant with the plaintiff, Mary Hartnett, received care from Dr. Milton Carvahlo, a New York obstetrician. Dr. Carvahlo, aware that Dwyer had experienced two prior miscarriages, prescribed the drug Dienestrol (DEN), as a preventative measure. DEN is a synthetic estrogen that was approved in 1950 and administered to patients with a high risk of miscarriage due to hormonal deficiency. Dwyer gave birth to Hartnett on September 29, 1960.

In the mid–1970's, Dwyer learned of the dangers of Diethylo-stilbestrol (DES) through media publicity. DES is a synthetic estrogen, similar to DEN. Dwyer, unable to recall the name of the drug that had been prescribed during her pregnancy with Hartnett, became concerned. As a result, Dwyer asked two doctors, Dwyer's present gynecologist and Hartnett's pediatrician, whether it was possible that Dwyer had been prescribed DES during her pregnancy. The latter said it was possible and the former said it was unlikely. Neither doctor, however, had any personal knowledge of the events concerning Dwyer's pregnancy.

Dwyer then wrote to Dr. Carvahlo's office requesting the same information. She received a reply stating that Dr. Carvahlo had moved from the area and that her office records were unavailable. In addition, Dwyer wrote to Lourdes Hospital, where she had given birth to Hartnett. The hospital stated in response, that it found "no prescriptions for Stilbeslerol [another name for DES] while you were here in this hospital during your 1960 admission." Dwyer made no further inquiries into the matter.

In 1982, Hartnett was hospitalized for surgery necessitated by an ectopic pregnancy. During the surgery it was necessary to remove Hartnett's left fallopian tube and left ovary. After conducting a complete gynecological examination, Hartnett's physician informed Hartnett that she had been exposed to DES *in utero* and was suffering from

various "stigmas" of that condition, including an impaired ability to carry a pregnancy to term.

Following hospitalization, Hartnett discussed the matter with her mother and was informed of Dwyer's attempts to gain information in the 1970's. Hartnett made no further investigation into the matter, except in 1986, when Hartnett met with her attorney and discussed the possibility of contacting Dr. Carvahlo, but decided against it.

Between 1981 and 1988 Hartnett suffered two miscarriages and three premature births. In 1988, she elected to have a tubal ligation of her remaining fallopian tube.

In 1988, Mary and Joseph Hartnett initiated suit against Eli Lilly and Company, the manufacturer of DES. During discovery, Eli Lilly located and deposed Dr. Carvahlo. Eli Lilly also obtained Dwyer's records from the hospital. Both Dr. Carvahlo's and the Lourdes Hospital's records revealed that Dwyer was prescribed DEN, not DES. As a result of this information, the Hartnetts dismissed their suit against Eli Lilly and initiated an action in the Northern District of New York against Schering and two other DEN manufacturers. The district court, however, dismissed the Hartnetts' suit for lack of diversity.

The Hartnetts subsequently filed this action against Schering in the United States District Court for the District of Maryland. Upon finding that the Hartnetts failed to bring their claim within the applicable three year statute of limitations period, the district court granted summary judgment in favor of Schering. The Hartnetts now appeal.

## SUMMARY JUDGMENT

The Hartnetts argue that the district court erred in granting Schering's motion for summary judgment. Specifically, the Hartnetts contend that under Maryland's discovery rule their cause of action against Schering did not accrue until 1988 when the Hartnetts first learned that DEN, not DES, was prescribed to Dwyer during her pregnancy.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Appellate courts review contested grants of summary judgment *de novo* viewing all facts in a light most favorable to the nonmoving party. *Jackson v. Kimel*, 992 F.2d 1318, 1324 (4th Cir.1993). It is uncontested that a three year statute of limitations applies to this suit. Accordingly, we must affirm the district court's grant of summary judgment if we find as a matter of law that the cause of action accrued before August 15, 1987 (three years before the Hartnetts initiated the present suit). *See Id.*

## STATUTE OF LIMITATIONS

Maryland law provides that a "civil action at law shall be filed within three years from the date it accrues." Md.Cts. & Jud. Proc.Code Ann. § 5–101 (1989). The Maryland courts have held in interpreting this statute that a cause of action accrues in product liability and negligence cases "when the plaintiff *knows or should have known* that [s]he has a *cause of action.*" *Pennwalt Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155 (1988) (emphasis added). This legal concept has been more commonly referred to as the "discovery" rule. *Id.* 550 A.2d at 1160.

Under Maryland law a plaintiff "should have known" of a cause of action if (i) she has "knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation" and (ii) an investigation "pursued with reasonable diligence would have led to knowledge of the alleged tort[1]." *Id.* at 1163. In other words, once a plaintiff has reason to know that she has been injured, she is obliged to conduct a reasonably diligent investigation under the circumstances and is charged for limitations purposes with constructive knowledge of the facts that such an investigation would have uncovered. This concept of accrual gives a "blamelessly igno-

---

1. The requisite awareness that a plaintiff must have in a medical products liability case is actual or implied knowledge that: (1) injury has oc-   curred; (2) it was caused by the defendant, and (3) there was a manufacturer wrongdoing or product defect. *Id.* at 1166.

rant" plaintiff who exercises reasonable diligence the full benefit of the statutory period in which to file suit. *Id.* at 1159.

 Viewing the entire record before us in a light most favorable to the plaintiffs, we find that the Hartnetts ceased to be blamelessly ignorant in 1982, if not earlier. The uncontroverted evidence reveals that in March 1981, Mary Hartnett was informed by her physician that she suffered from various "stigmas" of *in utero* exposure to DES, including possible future inability to bring a fetus to term. This diagnosis was later confirmed by a DES specialist in 1982. Such facts are sufficient, as a matter of law, to cause a reasonable person to investigate further. Consequently, under Maryland law the Hartnetts had constructive knowledge of all facts that a reasonably diligent investigation *at the time*[2] would have revealed.

■ We find, in cases involving medical issues, a reasonably diligent investigation must, at a minimum, include an attempt to obtain and review all available medical records. Had the Hartnetts done so, they would have learned that Dwyer had been prescribed DEN, not DES, during her pregnancy. Further reasonable investigation would have revealed that White Laboratories, a subsidiary of Schering, was the manufacturer of the DEN Dwyer had taken in 1960. Moreover, media coverage, medical literature, and case law in existence in 1982 would have readily revealed the numerous allegations that DEN posed the same dangers as DES.[3] *See Needham v. White Laboratories, Inc.,* 639 F.2d 394 (7th Cir.1981) (jury verdict for plaintiff but reversed because of erroneous instructions to the jury); *Abel v. Eli Lilly & Co.,* 94 Mich.App. 59, 289 N.W.2d 20, 22 (1980) (treating DES and DEN interchangeably); *Ferrigno v. Eli Lilly & Co.,* 175 N.J.Super. 551, 420 A.2d 1305, 1309 (1980) (treating DES and DEN interchangeably).

Having determined that the Hartnetts were not "blamelessly ignorant" after August 14, 1987 (three years before initiation of this suit), we find the Hartnetts' action barred by the Maryland statute of limitations and accordingly affirm the district court's grant of summary judgment.

*AFFIRMED.*

---

2. Dwyer's inquiry five years earlier cannot satisfy the Hartnetts' obligation to conduct an independent investigation. To hold differently, would result in an exception that consumes the rule.

3. In 1972 the Food and Drug Administration banned any further sale and use of all synthetic estrogen drugs for the prevention of miscarriages and ordered the drug companies to warn physicians and the public of their dangers.