**Marguerite J. VASS, et al., Plaintiffs,**

v.

**COMPAQ COMPUTER CORPORATION, et al., Defendants.**

**Civil No. AMD 94–2237.**

United States District Court, D. Maryland.

Jan. 22, 1997.

Carl E. Tuerk, Jr., Mary Rose Elizabeth Cook and Cooper, Beckman & Tuerk, LLP, Baltimore, MD, and Stephen J. Nolan and Nolan, Plumhoff & Williams, Towson, MD, for plaintiffs.

James K. Archibald, Venable, Baetjer & Howard, LLP, Baltimore, MD (DeBevoise & Plimpton, New York City, of counsel), for Compaq Computer Corporation.

DAVIS, District Judge.

In an early manifestation of "Don't Ask, Don't Tell[1]," plaintiff Marguerite Vass, a legal secretary for a prominent and prolific practitioner, visited a physician and complained of pain in her wrists and tingling in her fingers while engaged in ordinary tasks such as driving her automobile and cooking. She allegedly did not tell him that she was a legal secretary, and he allegedly did not ask what she did for a living. Furthermore, she did not ask him to explain his diagnosis and the reason for the prescribed medication, and he did not tell her that his tentative diagnosis was carpal tunnel syndrome. All of this occurred in October 1990, a time when, according to plaintiff's own expert, knowledge of the connection between keyboards and carpal tunnel syndrome had been well known to the medical and legal communities *for more than 20 years*. It was only when her pain became unbearable, two years later, in June 1992, that Mrs. Vass returned to the doctor and obtained a definitive diagnosis of carpal tunnel syndrome.

Mrs. Vass and her husband did not file this action against Compaq Computer Corporation ("Compaq") and others until June 24, 1994. They contend that two Compaq computer keyboards she used from 1988 through 1992 were defectively designed and caused Mrs. Vass to suffer carpal tunnel syndrome. They allege damage claims based on negligence, strict products liability and breach of warranty. Presently before the Court is Compaq's motion for summary judgment on limitations grounds as to each of plaintiffs'

---

1. *Cf. Thomasson v. Perry,* 80 F.3d 915 (4th Cir.) (en banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 358, 136 L.Ed.2d 250 (1996); *Richenberg v. Perry,* 97 F.3d 256 (8th Cir.1996).

claims. The issues have been fully briefed and counsel have been heard. For the reasons stated below, I shall deny Compaq's motion for summary judgment as to the negligence and products liability claims; grant Compaq's motion for summary judgment as to the breach of warranty claim related to the keyboard purchased in 1988; deny Compaq's motion for summary judgment as to the breach of warranty claim for the keyboard purchased in 1992; and deny Compaq's motion for summary judgment as to the derivative loss of consortium claim.

## I. SUMMARY JUDGMENT

Pursuant to familiar summary judgment standards, I must assess the material facts established in the record and construe the facts in the light most favorable to Vass, the non-movant, drawing all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). A fact is material if, when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Reece v. Martin Marietta Technologies, Inc.*, 914 F.Supp. 1236, 1239 (D.Md.1995). Thus, in order to grant Compaq's motion for summary judgment, I must conclude that no genuinely disputed issues of material fact remain upon which a rational jury could find in Vass's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. ANALYSIS

### A. Products Liability/Negligence

Compaq argues that Vass's products liability and negligence claims are time-barred

under Md.Ann.Code, Cts. & Jud.Proc.Art., § 5–101 (1995 Repl.Vol., 1974).[2] Section 5–101 provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." The term "accrues" is not legislatively defined and has consequently been left to judicial determination. *Doe v. American Nat'l Red Cross*, 923 F.Supp. 753, 756 (D.Md.1996); *Pennwalt Corp. v. Nasios*, 314 Md. 433, 437, 550 A.2d 1155, 1157 (1988); *Pierce v. Johns–Manville Sales. Corp.*, 296 Md. 656, 664, 464 A.2d 1020, 1025 (1983); *Harig v. Johns–Manville Prod. Corp.*, 284 Md. 70, 75, 394 A.2d 299, 302 (1978).[3]

Under Maryland's "discovery" rule, a cause of action accrues once a plaintiff knows or should know she has been wronged. *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677, 680 (1981), *rev'g* 46 Md.App. 600, 421 A.2d 90 (1980). The discovery rule began as an exception to the general rule that an action accrued on the date of the wrong. Courts were displeased with the harsh effects of the "date of the wrong" rule, as it often barred a plaintiff's claim before she could ascertain whether negligence had occurred. *Id.; see also Waldman v. Rohrbaugh*, 241 Md. 137, 145, 215 A.2d 825, 830 (1966) (applying the exception to medical malpractice claims). The Maryland Court of Appeals explicitly adopted the discovery "exception" as the general rule in *Poffenberger*.

Arguments about accrual under the discovery rule abound in the reported cases, perhaps because we in the judiciary have been remiss in explicating the law in this area with the requisite lucidity; perhaps because coun-

---

**2.** Vass's claims arise under the law of Pennsylvania, and Maryland courts would apply Pennsylvania law to the merits of her claims. Maryland limitations law, however, would be applied by a Maryland court, and this Court must do so as well. *See Hartnett v. Schering Corp.*, 806 F.Supp. 1231, 1233–34 & n. 12 (D.Md.1992), *aff'd* 2 F.3d 90 (4th Cir.1993). *Cf. Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941).

**3.** "Whenever a limitations statute is invoked successfully a wrong is likely to survive without remedy for he who has been harmed. It is generally known in Maryland that for the most part a statutory bar will fall after three years. The real problem is three years from when." *Poffenberger v. Risser*, 46 Md.App. 600, 601, 421 A.2d 90, 90–91 (1980), *rev'd on other grounds*, 290 Md. 631, 431 A.2d 677 (1981).

sel often find themselves in difficult circumstances that require advocacy of awkward interpretations of the law. In any event, this Court is faced in this case with the specific task of stating the requisite level of awareness a strict products liability plaintiff must have in order for the statute of limitations to begin to run in a repetitive motion injury claim.

■ In a products liability action, the discovery rule mandates that "the statute of limitations should not begin to run until the plaintiff knows or through the exercise of due diligence should know of injury, its probable cause, and either manufacturer wrongdoing or product defect." *Pennwalt Corp. v. Nasios*, 314 Md. 433, 452, 550 A.2d 1155, 1165 (1988); *Stone–Pigott v. G.D. Searle & Co.*, 660 F.Supp. 366, 368 (D.Md.1987), *aff'd sub nom. Phillips v. G.D. Searle & Co.*, 884 F.2d 796 (4th Cir.1989); *see also Hartnett v. Schering Corp.*, 806 F.Supp. 1231 (D.Md. 1992), *aff'd* 2 F.3d 90 (4th Cir.1993). Once a plaintiff has implied knowledge, that is, once she is placed on inquiry notice, a products liability plaintiff is charged with knowledge of the facts a diligent investigation would uncover. *Hartnett*, 2 F.3d at 92.[4] It is important to recall, however, that the plaintiff has no duty to *commence* a diligent investigation unless and until she becomes aware of circumstances which would prompt a reasonable person to investigate. *Pennwalt*, 314 Md. at 451–52, 550 A.2d at 1165.

■ According to Vass, she did not possess *actual* knowledge at any time prior to June 24, 1991, the date which is three years prior to her institution of this action, that a defectively designed and manufactured Compaq keyboard probably caused the recurrent and increasing discomfort in her wrists, arms and shoulders. As might be expected, the defendant is without any substantial evidence that Vass *did* have actual knowledge, and thus the motion for summary judgment turns upon whether Vass was aware of circumstances which, if known to a reasonable person under the same or similar circumstances, would have prompted such a reasonable person to undertake a diligent investigation.[5]

---

4. In *Doe*, I reasoned as follows:
"[I]mplied actual knowledge [is] that knowledge that would in all probability have resulted from a diligent investigation pursued upon awareness of circumstances that would cause a reasonable person to investigate." *Pennwalt*, 314 Md. at 442–43, 550 A.2d at 1160. This does not mean that in cases of implied knowledge the beginning of the limitations period is tolled "until the end of an additional period deemed reasonable for making the follow-up investigation." *Id.* at 447–48, 550 A.2d at 1163 (citing *O'Hara v. Kovens*, 305 Md. 280, 288–89, 503 A.2d 1313, 1317–18 (1986)). *Rather, the limitations period begins to run once the plaintiff has sufficient knowledge to have "prompt[ed] a reasonable person to inquire further," i.e., once the plaintiff is on "inquiry notice." Id.*
Therefore, in simple terms, a plaintiff is only on inquiry notice, and thus the statute of limitations will begin to run, when the plaintiff has "knowledge of circumstances which would cause a reasonable person to undertake an investigation which, if pursued with reasonable diligence, would have lead to knowledge of the alleged [tort]." *O'Hara*, 305 Md. at 302, 503 A.2d at 1324. In such a situation, should the plaintiff fail to seek out the facts supporting a cause of action, it can fairly be said that the plaintiff has inexcusably slept on his rights.
*Id.* at 448–49, 550 A.2d at 1163 (alterations in the original).

923 F.Supp. at 756–57 (emphasis added).

5. The cases make it clear, although often only *sub silentio*, that the duty to undertake a diligent investigation imposes a duty upon the putative plaintiff to obtain adequate legal and medical advice and assistance. *See*, for example, *Hartnett*. A woman developed a reasonable fear that she had been given a drug (DES) during pregnancy, some 15 years or so earlier, which would cause harm to her daughter when the latter attempted to bear children. Apparently without the assistance of a lawyer, she was rebuffed by her former obstetrician's office, who told her he "had moved from the area" and that her medical records were unavailable. In fact, the doctor had apparently retired to Arizona, where he was later found by the lawyers defending against her daughter's subsequent lawsuit against the manufacturer of a similar drug. The plaintiff's mother was also advised by the hospital where she had given birth, in an artfully-worded letter that it, the hospital, had found "no prescriptions" indicating she had received the drug about which inquiry had been made. In fact, she had received a common substitute for that drug. The daughter-plaintiff's failure to investigate her mother's pre-natal medical history in the face of these setbacks to her mother's *own* attempts to obtain relevant information garnered no sympathy from the court, and her subsequent action was held time-barred as a matter of law, based largely on evidence of her own doctor's advice,

After a careful examination of the record, I am persuaded that a genuine dispute of material fact exists, and that the conflicting inferences reasonably to be drawn from the undisputed evidence necessarily pose but do not answer the question whether, at any time prior to June 24, 1991, Vass was aware of circumstances sufficient to cause a reasonable person to investigate a possible cause of action against Compaq. Put differently, correct application of the reasonable person test under the circumstances of this case cannot be accomplished as a matter of law, but must await the outcome of a weighing of evidence and a drawing of inferences, that is, fact finding, which is beyond the ken of summary judgment.

Notwithstanding the above, it must be observed that the summary judgment record compiled by Compaq contains a great deal of evidence from which it could readily be concluded that a reasonable person under the circumstances facing Mrs. Vass knew full well, more than three years before filing suit, (1) that there was very likely a connection between her use of a computer keyboard as a legal secretary and her increasing pain and discomfort, (2) that her work as a secretary would not (absent "wrongdoing") cause her such pain and discomfort, and thus (3) that she had been the victim of a wrong by "someone." Only a brief recital of the most telling circumstances demonstrates the point. As set forth above, the record shows that on October 30, 1990, Vass complained of hand pain to Brian Karlin, M.D., her regular physician's son who was seeing patients for his father. According to the medical records, Dr. Brian Karlin diagnosed Vass with "possible carpal tunnel" and prescribed a medication for her condition, but Vass maintains that Dr. Brian Karlin did not disclose, she did not ask and he did not tell her, that his diagnosis was carpal tunnel syndrome. She also claims that he did not know and did not ask, and that she did not tell him, that she worked as a legal secretary and spent most of her days typing at high speeds on a computer keyboard. Although by late 1990 the pain in her hands had become so excruciating that Vass was unable to cook, *or even to hold a pot of food,* she nevertheless continued to work (as a legal secretary), and undertook no further investigation of her symptoms or their causes until June 1992.

Jack Karlin, M.D., her long-time regular physician, also "suspected" carpal tunnel during her June 23, 1992, follow-up visit twenty months later. Vass admits that she and Dr. Jack Karlin discussed this diagnosis. Vass contends that her June 23, 1992, visit marked the first occasion on which she became aware that her symptoms could be linked to typing or keyboard usage. (Dr. Jack Karlin testified that he believed "repetitive typing" was causing Vass's pain and that he may have informed Vass of his belief prior to October 30, 1990, because he knew she was a typist. Whether a certain "type of typewriter" was causing the pain was not "relevant," however, and did not "hold an interest" for Dr. Jack Karlin because his sole objective was "directed at relieving her discomfort and pain.").

Furthermore, when Vass completed her application for worker's compensation benefits, shortly after seeing Dr. Jack Karlin in June 1992, she admitted that her symptoms had first appeared more than 18 months earlier, i.e., in approximately February 1991, which, coincidentally, was around the time that her superior had obtained what was supposedly an improved, "ergonomically correct" keyboard designed to relieve discomfort. Moreover, several years earlier, Vass had been diagnosed with pain and discomfort in her hands as a result of her repeated manipulation of another item of office equipment.

Whatever the weight of this and other evidence Compaq has exhaustively marshaled, on a motion for summary judgment, where I must credit Vass's version of the facts (and the nuances teased from the facts), I simply cannot conclude that there exist undisputed facts indicating that prior to June 23, 1991, Vass was aware of circumstances that would have alerted a reasonable person given more than three years prior to her institution of suit, that she was indeed a "DES daughter." *See* 806 F.Supp. at 1232–33, 1235; 2 F.2d at 93 n. 2.

under the same or similar circumstances to a potential cause of action.[6]

Vass's credibility is significantly implicated here. In that connection, reasonable minds could differ, first of all, as to exactly what Vass really knew, and second, in light of that determination, what a hypothetically reasonable and prudent person would or should have done with that information. There is no dispute that Vass had suffered an *injury* as of late 1990, and one might even be persuaded, based on this record and as a matter of law, that she *must* have known, as a matter of common sense, that her hands and arms hurt because of her typing. But as Judge Young aptly stated

> knowledge of causation ... may not be sufficient to start the statute of limitations running. In addition to knowledge of causation, a plaintiff must have some indication of wrongdoing before a cause of action can be said to have accrued.... Thus, in determining when a particular plaintiff's cause of action accrued, this Court must look for knowledge of causation and for some indication of wrongdoing that would prompt a prudent person to investigate her rights. Once a plaintiff knows or suspects both causation and wrongdoing, her cause of action has accrued and the statute of limitations begins to run.

*Stone–Pigott,* 660 F.Supp. at 368–69.

Thus, it would be incorrect to read the language of *Hartnett*—"[O]nce a plaintiff has reason to know that she has been injured, she is obliged to conduct a reasonably diligent investigation," 806 F.Supp. at 1234— literally.[7] Compaq understandably empha-

sizes that Vass suffered from a severely disabling injury as early as October 1990, as demonstrated by her inability even to hold a pot of food. It likely would be presumptuous, however, (and legal error, to boot) for me to conclude that the severity of a subjective symptom such as pain is sufficient as a matter of law to put a reasonable person on inquiry notice in a repetitive motion products liability action. Judge Lowe said it well when he observed:

> [T]he trial judge proceeded to hold that had the appellant used due diligence, the wrong should have been discovered. In short he applied the "prudent plaintiff" or "due diligence" test. In so doing, however, he overlooked the fact that plaintiff had alleged factual circumstances which, if proved and believed, may have made the applicability of those tests susceptible to different factual interpretations. The standard to be applied for when a cause of action accrues is properly a judicial determination, *Harig, supra* 284 Md. at 75, 394 A.2d [at 302]. But the factual nuances of the case, susceptible to varying interpretations to which that standard must be applied, are questions for a jury, subject to instructions of the court as to what in law is sufficient to constitute a bar or to take the case out of the statute. *That which constitutes diligence and prudence is, like beauty, a judgment made through the eyes of the beholder, not to be summarily determined by judges as a matter of law.*

*Poffenberger v. Risser,* 46 Md.App. 600, 604–05, 421 A.2d 90, 92–93 (1980) (footnote and

---

**6.** Compaq cites to numerous articles in print during the relevant time period that discuss the link between typing and repetitive stress injuries. Four of the articles Compaq lists were printed prior to June 23, 1991, and nine were printed after June 23, 1991, in periodicals Vass read regularly. Vass admits that she read and even clipped articles discussing the link between typing and repetitive stress injury, but not prior to June 23, 1991. Since there is no clear proof that Vass read one of the four articles published prior to June 23, 1991, I cannot conclude as a matter of law that any of the four articles provided Vass with the requisite awareness of injury, probable causation, and probable defect more than three years before she filed suit against Compaq. Nor can I conclude that any of the four pre-limitations articles "should have" alerted Vass to prob-

able causation and wrongdoing, because such a conclusion would dictate an absurd rule that one who claims to read a periodical regularly is duty bound to read every issue of that periodical from cover to cover, in its entirety.

**7.** In affirming *Hartnett,* the Fourth Circuit likewise used sweeping language: "In other words, once a plaintiff has reason to know that she has been injured, she is obliged to conduct a reasonably diligent investigation under the circumstances and is charged for limitations purposes with constructive knowledge of the facts that such an investigation would have uncovered." 2 F.3d at 92. As indicated in text, however, and as made clear by Judge Young in *Stone–Pigott,* under the Maryland cases, *mere knowledge of injury is not sufficient to trigger a duty to inquire.*

citation omitted) (emphasis added), *rev'd on other grounds*, 290 Md. 631, 636, 431 A.2d 677, 680 (1981). Accordingly, because the evidence here does not establish *as a matter of law* that Vass (as a reasonable person) had implied knowledge of injury, probable causation, *and* probable wrongdoing prior to June 24, 1991, Vass's negligence and strict liability claims, filed on June 24, 1994, may not be deemed time-barred on summary judgment.

### B. Breach of Warranty

Compaq also asserts that Vass's breach of warranty claim is barred by Md.Ann.Code, Commercial Law Art., § 2–725 (1992 Repl. Vol., 1975). Section 2–725 provides in relevant part that

(1) An action for breach of contract for sale must be commenced within four years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

Section 2–725 governs warranty actions by third party beneficiaries. *Mills v. Int'l Harvester Co.*, 554 F.Supp. 611, 612 (D.Md.1982). ■ A warranty claim accrues on the date the product is delivered. *Id.* Because Vass used both a "286 model" and a "386 model" of the Compaq computer and keyboard, two products are at issue for which delivery dates must be ascertained. The parties have not identified actual delivery dates for the two computers and keyboards. However, Vass maintains that the law firm purchased the 286 model in late 1987 or early 1988, and the 386 model in early 1992. Compaq's evidence shows that the two keyboards Vass produced at deposition were manufactured in late 1988 and early 1989.

Assuming that the firm purchased the 286 model in early 1988, as Vass claims, her breach of warranty claim against Compaq for the 286 model is certainly time-barred.

Vass's claim as to the 286 model would have accrued more than four years before June 1994. Vass's claim against Compaq for the 386 model, however, is within the four year limitations period since Vass filed her complaint in 1994, just two years after she claims the keyboard was delivered to her employer.

That the two keyboards may have contributed to the same injury is beside the point for limitations purposes. While it has been held that multiple but similar and related injuries arising from a single defective product will not be treated as isolated claims for limitations purposes, *Hartnett*, 806 F.Supp. at 1234 n. 15, a different issue is presented where two distinct products, each providing its own warranty of fitness for use, contribute to a single injury. Vass used two different Compaq keyboards. The situation would be no different had she used another manufacturer's defective keyboard in 1988, suffered an injury, and used Compaq's defective keyboard in 1992: Vass would have separate warranty claims based on separate keyboards. Compaq, as warrantor of the keyboard Vass used in 1992, must take its victim as it finds her. Thus, Vass's breach of warranty claim for the keyboard her employer purchased in 1992 is not barred by the statute of limitations.

### C. Loss of Consortium

The derivative claim for loss of consortium is preserved since the products liability, negligence and breach of warranty claims have not been dismissed. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir.1995).

### III. CONCLUSION

For the reasons discussed above, I shall deny Compaq's motion for summary judgment as to Vass's products liability and negligence claims; grant Compaq's motion for summary judgment as to Vass's breach of warranty claim for the keyboard purchased in 1988; deny Compaq's motion for summary judgment as to Vass's breach of warranty claim for the keyboard purchased in 1992; and deny Compaq's motion for summary judgment as to the loss of consortium claim. As I indicated to counsel at the hearing, under the circumstances presented, I shall

bifurcate this case and set the matter for trial on the issue of limitations. A separate order follows.

### ORDER

In accordance with the foregoing Memorandum, it is this 22nd day of January, 1997, by the United States District Court for the District of Maryland, ORDERED

(1) That the defendant's Motion for Summary Judgment as to counts one, two and five of the Amended Complaint, BE and it hereby IS, DENIED; and it is further ORDERED

(2) That the defendant's Motion for Summary Judgment as to count three as it pertains to the 1992 keyboard BE, and it hereby IS, DENIED; and it is further ORDERED

(3) That JUDGMENT BE and it hereby IS ENTERED IN FAVOR OF THE DEFENDANTS as to count three insofar as count three pertains to the 1988 keyboard.