UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1814

JOHN H. QUILLIN; EVELYN M. QUILLIN,

            Plaintiffs - Appellants,

      v.

C.B. FLEET HOLDING COMPANY, INCORPORATED; C.B. FLEET
COMPANY, INCORPORATED; WAL-MART STORES, INCORPORATED; WAL-
MART STORES EAST, INCORPORATED; WAL-MART STORES EAST, LP,

            Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:07-cv-00503-CCB)

Argued:  March 26, 2009                Decided:  May 14, 2009

Before GREGORY and DUNCAN, Circuit Judges, and Jackson L. KISER,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** D. Michelle Douglas, KALBIAN & HAGERTY, LLP, Washington,
D.C., for Appellants.   Richard Matthew Barnes, GOODELL DEVRIES
LEECH & DANN, LLP, Baltimore, Maryland, for Appellees. **ON BRIEF:**
Haig V. Kalbian, Aaron W. Knights, KALBIAN & HAGERTY, LLP,
Washington, D.C., for Appellants.   Thomas J. S. Waxter, III,
Paula Krahn Merkle, Derek M. Stikeleather, GOODELL DEVRIES LEECH
& DANN, LLP, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

At his doctor's instruction, plaintiff John H. Quillin ("Quillin") ingested twice the recommended amount of the over-the-counter oral saline laxative Fleet Phospho-soda ("FPS") the day before he underwent a routine colonoscopy. Following the procedure, he suffered severe complications and long-term renal failure. He sued C.B. Fleet Holding Co., Inc., the maker of FPS, and Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, Inc., where he purchased the product, (collectively "Fleet") under both strict liability and negligence theories of products liability relating to design defects and failure to warn, and for breach of warranty and loss of consortium. The district court dismissed all of Quillin's claims, finding that it was barred by the relevant Maryland statute of limitations. This conclusion was premised upon the application of Maryland's discovery rule, which gives a potential plaintiff three years to file suit from the date that he knows or should have known that he had a cause of action. Finding that Quillin was on inquiry notice in March 2003, the district court found his January 2007 filing untimely. For the reasons that follow, we affirm.

I.

On February 24, 2003, in preparation for a routine colonoscopy the next day, Quillin took two packets of FPS, an over-the-counter sodium phosphate solution sold as a laxative. Each packet contained 45 milliliters (mL) of FPS. In the dosage instruction on the back of the packaging, the product label instructs adult users "[NOT TO] TAKE MORE THAN THIS AMOUNT [20 TO 45 ML] IN A 24-HOUR PERIOD." J.A. at 211.[1] Relying on instructions from his doctor, Quillin took twice the recommended dose. At the time of his colonoscopy, Quillin suffered from diabetes, hypertension, hyperlipidemia, arthritis, and coronary artery disease. He took a number of medications for those conditions.

Following the colonoscopy procedure, Quillin became quite ill. Upon the instruction of his doctor, he checked himself into the hospital on February 27, 2003, where he was diagnosed with and treated for acute renal failure and remained for two weeks. He told doctors on his admission that he "had taken a significant amount of laxatives prior to his colonoscopy" and

---

[1]In the same area of the label, the product also contains the instructions: "SINGLE DAILY DOSAGE: DO NOT TAKE MORE UNLESS DIRECTED BY A DOCTOR. SEE WARNINGS." J.A. at 211. The instructions given to Quillin by his physician are not in the record, but it is undisputed that Quillin was instructed to take two packets of FPS, each containing 45 mL. See Appellant's Br. at 3; Appellee's Br. at 2-3, 23-24 ("Mr. Quillin purchased two 45 mL bottles of [FPS], as directed by his physician.").

4

that he thought they "may have dried him out." J.A. at 138. A March 11, 2003 renal biopsy revealed interstitial fibrosis and tubular injury. His discharge summary, dated March 12, 2003, contained a diagnosis of "acute renal failure, probably related again to dehydration with insult from ACE inhibitors and NSAIDs, and also from hydrochlorothiazide causing ATN or even acute interstitial nephritis." J.A. at 145. A follow-up examination noted that the renal biopsy "confirmed some type of drug-associated diagnosis." J.A. at 215. Since 2003, he has continued to suffer renal problems, which have resulted in the insertion of a stent and now-daily dialysis, and which may necessitate a kidney transplant. After his discharge from the hospital, there is no evidence that Quillin pursued any investigation into the cause of his injury.

There has been a growing consensus that the use of FPS prior to certain procedures could cause kidney-related complications. Medical articles from as early as 1996 posited a correlation between oral sodium phosphate solutions and renal problems. In June 2004, a study was published by Dr. Glen S. Markowitz in the journal Human Pathology ("the Markowitz study") that claimed to support "a novel association of acute nephrocalcinosis and acute renal failure (ARF) with colonoscopy preceded by a bowel-cleansing regimen consisting of oral sodium phosphate solution." J.A. at 279.

5

In June 2006, Quillin learned from a newspaper article that there might be an association between FPS and kidney failure. Quillin filed his Complaint against Fleet in Maryland state court on January 17, 2007, alleging both strict liability and negligence theories of products liability relating to design defects and failure to warn, breach of warranty claims, and loss of consortium. Fleet filed for and was granted removal. In the Maryland District Court, Fleet moved for summary judgment on the ground of untimeliness. The district court granted the motion on October 11, 2007. The court found that Quillin's cause of action accrued against Fleet on March 11, 2003, the date of the renal biopsy, and that his filing was therefore untimely under Maryland's statute of limitations. Quillin moved for reconsideration on the basis of new evidence. The district court denied Quillin's motion for reconsideration on July 18, 2008.

## II.

The district court exercised diversity jurisdiction over this case under 28 U.S.C. § 1332, and we now have jurisdiction over the appeal under 28 U.S.C. § 1291. A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits. See Erie R.R. Co. v. Tompkins, 204 U.S. 64, 79 (1938); see also Volvo Const. Equip. N. Am.,

6

Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599–600 (4th Cir. 2004).  Because this appeal is taken from a federal district court in Maryland, we apply Maryland state law.

We review a grant of summary judgment de novo with the facts taken in the light most favorable to the non-moving party. Meson v. GATX Tech. Servs. Corp., 507 F.3d 803, 806 (4th Cir. 2007).  Summary judgment is properly granted only when there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Meson, 507 F.3d at 806.  The party seeking summary judgment "bears an initial burden" to demonstrate the absence of a genuine issue of material fact. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).  Where the non-moving party bears the burden of proving an issue at trial, however, that party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324 (quotations and citations omitted).

A.

The questions in this case arise concerning what Quillin knew, what he should have known, and when he knew or should have known it.  Maryland has a three-year statute of limitations for

7

tort actions.  Md. Cts. & Jud. Proc. Code Ann. § 5-101; Hartnett v. Schering Corp., 2 F.3d 90, 92 (4th Cir. 1993).  Under Maryland's general discovery rule, the statute of limitations begins to run when the allegedly tortious conduct is discovered--that is, when the plaintiff "in fact knew or reasonably should have known of the wrong."  Pennwalt Corp. v. Nasios, 550 A.2d 1155, 1160 (Md. 1988) (quoting Poffenberger v. Risser, 431 A.2d 677, 680 (Md. 1981) (applying the discovery rule to all tort claims)).  Actual knowledge, either express or implied, is required to find that a tort was discovered within the meaning of the rule.  Poffenberger, 431 A.2d at 681.  Because implied actual knowledge is sufficient to start the limitations period, courts consider the three years to begin when a plaintiff is on inquiry notice.  Inquiry notice arises "when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further."  Pennwalt, 550 A.2d at 1163.

The district court concluded that Quillin was on inquiry notice in March 2003 and that a reasonable investigation undertaken at the time would have revealed information sufficient to support a claim.  Quillin challenges both conclusions, which we address in turn.

1.

In medical products liability cases, Maryland employs a three-part test to determine whether a plaintiff had sufficient notice to start the statute of limitations period. A court asks whether the plaintiff knew or had reason to know that: (1) he had suffered an injury; (2) the injury was caused by the defendant; and (3) there was either wrongdoing by the manufacturer or a product defect. Pennwalt, 550 A.2d at 1161-62, 1165; Hartnett, 2 F.3d at 92 n.1; see also Hartnett, 2 F.3d at 92 (holding that plaintiff must have been able to obtain "knowledge of the alleged tort"). Because the standard includes all of the facts an individual should have known, the plaintiff is charged with knowledge of everything that a reasonable investigation would have disclosed. Baysinger v. Schmid Prods. Co., 514 A.2d 1, 3 (Md. 1986). This includes, at a minimum, the facts that would have been disclosed by the relevant medical records. Harnett, 2 F.3d at 93.

The district court found that the latest date Quillin's cause of action could have accrued, putting him on inquiry notice, was March 11, 2003, the date of his renal biopsy. Thus, the three-year statute of limitations began to run on that date and expired before he filed his case on January 17, 2007. Because of "the proximity in time" of Quillin's kidney failure to the colonoscopy procedure and his ingestion of FPS, the

9

district court found that he "was on notice that he had suffered an injury and possible wrongdoing." J.A. at 240. Thus, he was charged with any knowledge that a reasonable investigation undertaken at the time of the biopsy would have uncovered.

Quillin argues that the district court's finding that he was on inquiry notice of a possible cause of action based upon the temporal proximity of his FPS ingestion, his colonoscopy, and his renal problems was incorrect as a matter of law. He claims that the facts available as of March 2003 were not such that they would have caused a reasonable person to investigate further. In support of this claim, he cites the "drug-associated diagnosis" in his discharge report, which is given as "acute renal failure probably related to dehydration." J.A. at 145. The specific drugs that are mentioned as possibly being related to that failure are Quillin's "ACE inhibitor, NSAID, hydrocholothlazide [sic], and the aspirin." Appellee's Br. at 4. FPS is nowhere mentioned; and the only drugs named are those he was prescribed for pre-existing conditions. Quillin asserts that his extensive list of co-morbid diseases means that he could reasonably have assumed those disease and their associate drugs--not the combination of FPS and the colonoscopy--were the cause of his renal problems. Therefore, he had no knowledge that FPS could have been a cause of his injury.

10

Fleet argues that Quillin had sufficient facts in March 2003 to have led a reasonable person to inquire further, including knowledge that the dose of FPS he took was twice the daily limit, that the injury that occurred following his colonoscopy was unusual, and that a connection existed between the laxatives he took and the dehydration that was cited as the cause of his injury. In particular, Fleet emphasizes Quillin's suspicions that his dehydration prior to the colonoscopy contributed to his complications. The hospital discharge report cites dehydration as Quillin's diagnosis, and he made statements to doctors that taking the FPS may have "dried him out." J.A. at 138. The packaging for FPS indicated that users should "[s]top using this product and consult a doctor if you . . . [h]ave no bowel movement after use as dehydration may occur." J.A. at 211 (emphasis added).

In this case, we find that Quillin had sufficient information to know that he had suffered an injury and that Fleet's product may have been a cause of the injury. Complications from his colonoscopy led him to check himself into the hospital, where he remained for two weeks. While there, he was given a diagnosis of renal failure, and he has continued to suffer health problems as a result of the procedure in the years that followed. The injury in this case was thus clear, and a reasonable person would have undertaken an investigation into

11

its cause.  See Hartnett, 2 F.3d at 92 (it is the knowledge of injury, not the knowledge of its cause that gives rise to the duty to investigate).

The fact that Quillin may not have been certain that his injury was a result of his ingestion of FPS did not free him from the obligation to investigate the cause of his injury if he was reasonably on notice that some wrongdoing may have occurred. In an analogous case, a patient was deemed to be on notice of the improper medical care she received following a visit to her doctor from which she "came away . . . with a belief that something wrong had been done." Lutheran Hosp. of Md. v. Levy, 482 A.2d 23, 27 (Md. Ct. Spec. App. 1984) (quotations omitted). Under Maryland law, it was immaterial that "the wrong she then thought existed . . . was not the wrong ultimately established." Id. Some uncertainty about the cause of an injury does not alleviate an individual of the responsibility to inquire. Holding otherwise would eviscerate the requirement of a reasonable investigation. To be on inquiry notice, a potential plaintiff must only know or have reason to know of an injury, its cause, and the wrongdoing which gave rise to it.


2.

For limitations purposes, once a plaintiff has knowledge of an injury, he or she is charged with knowledge of what a

12

reasonably diligent investigation would have uncovered. Pennwalt, 550 A.2d. at 452 (the discovery rule starts the limitations period running based upon what the plaintiff "knows or through the exercise of due diligence should know"); Harnett, 2 F.3d at 92 (A plaintiff "should have known of a cause of action if . . . an investigation pursued with reasonable diligence would have led to knowledge of the alleged tort.") (quotations and citations omitted). Given that Quillin was on inquiry notice in March 2003, there remains the question of what information a reasonably diligent investigation would have revealed.

In order for the statute of limitations to commence running, an investigation undertaken at the time Quillin was on notice--March 11, 2003 at the latest--must have revealed sufficient information to begin the limitations period, including that information there was "either manufacturer wrongdoing or product defect." Pennwalt, 550 A.2d at 1165. The district court found that a reasonable investigation in March 2003 would have revealed evidence to support Quillin's intuition that the dehydration he suffered was related to his ingestion of FPS. J.A. at 244. Further, medical literature was available that linked the ingestion of oral sodium phosphate solutions with renal problems. J.A. at 244 n.3 (citing several of the studies, whose titles alone indicate such a connection).

13

The district court distinguished its ruling that Quillin was on inquiry notice from other cases by relying on Quillin's failure to make any investigation into the cause of his kidney failure, as well as the close temporal proximity of the kidney failure to "defendant's [Fleet's] alleged improper conduct," which "indicate[d] wrongdoing." J.A. at 242. As of March 11, 2003, there was "sufficient information . . . to support a possible claim," J.A. at 243, including: medical records stating dehydration as the likely cause of his renal failure; and medical literature establishing "a connection between oral sodium phosphate laxatives . . ., dehydration, and acute renal failure." J.A. at 244. Based upon this information, the district court concluded that a reasonable investigation performed at the time Quillin was placed on inquiry notice, in March 2003, would have revealed enough evidence to support a cause of action. His January 17, 2007 filing was therefore untimely because the three-year statute of limitations period expired in March 2006.

Under the standard for granting summary judgment, once Fleet had met its "initial burden of demonstrating the absence of any material issue of fact," Ruffin v. Shaw Inds., Inc., 149 F.3d 294, 301 (4th Cir. 1998) (citing Celotex 477 U.S. at 323), by citing the evidence available to Quillin in March 2003, it became Quillin's responsibility to demonstrate that an issue

14

remained for trial. The Supreme Court has cautioned that the party moving for summary judgment does not have to definitively prove the absence of an issue of material fact. Celotex, 477 U.S. at 322 (finding a Court of Appeals holding to the contrary "inconsistent with the standard . . . set forth in Rule 56(c)"); id. at 323 (no requirement that the moving party "negat[e] the opponent's claim"). Instead,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Id.

We are mindful of the fact that the running of the limitations period is an affirmative defense, which Fleet would bear the burden of proving at trial. See Ver Brycke v. Ver Brycke, 843 A.2d 758, 775 (Md. 2004) (citing Newell v. Richards, 594 A.2d 1152, 1156 (Md. 1991) ("[T]he party raising the defense of the statute of limitations has the burden of showing that the defense has merit.")). However, where a party asserts that the discovery rule applies to vitiate or delay the normal limitations period, that party bears the burden of proving that the discovery rule applies. Newell, 594 at 1156; Finch v. Hughes Aircraft Co., 469 A.2d 867, 893 (Md. Ct. Spec. App.

15

1984).  Quillin therefore had the burden to show that his filing was timely.

Once Fleet made a motion for summary judgment accompanied by the kind of support required by Rule 56(c), it fell to Quillin to show that a factual dispute remained as to whether he was on inquiry notice.  Thus, it was his responsibility to provide evidentiary support for his opposition to the summary judgment motion.  Fleet provided all that was required to support its allegation that no genuine issue of material fact existed as to this element.  Quillin had the opportunity to refute this claim but the evidence he entered into the record failed to prove that a genuine issue of material fact continued to exist.  Because Quillin failed to meet this burden under the summary judgment standard, the district court did not err in granting Fleet's motion.

B.

Quillin also argues that the question of whether he was on inquiry notice could only properly be determined by a jury, not by the district court at the summary judgment phase of trial. In most instances, disputes about when a plaintiff is on inquiry notice are factual questions best left to the jury's determination.  Baysinger, 514 A.2d at 4 ("That ultimate fact [of when the plaintiffs were on notice] is ordinarily a question

16

for the trier of facts going to the merits.") (quotations and citations omitted); see also Pennwalt, 550 A.2d at 450 (noting with approval the reversal of a grant of summary judgment where the factual question of inquiry notice was in dispute). However, where a reasonable trier of fact could reach only one conclusion concerning the point at which the limitations period began to run, summary judgment is appropriate. Pennwalt, 550 A.2d at 450 (stating that summary judgment on limitations grounds is appropriate where "reasonable men could not find otherwise" than that plaintiff's cause of action is time-barred); see also Levy, 482 A.2d at 27 (upholding summary judgment where "a reasonable fact finder could only conclude" that plaintiff was on inquiry notice more than three years before filing her claim); Hartnett, 2 F.3d at 93 (affirming a grant of summary judgment where the district court found as a matter of law that plaintiff was on inquiry notice more than three years before the filing of the suit).

In the instant case, the district court correctly found as a matter of law that Quillin was on inquiry notice in March 2003. Unlike the Baysinger case, which Quillin cites to support his claim, Quillin did not have medical information that contradicted his theory of his injury. In Baysinger, the plaintiff brought a products liability action against the maker of her intrauterine contraceptive device ("IUD") more than three

17

years after she suffered injury. She had pursued an initial investigation into the cause of her injury within the limitations period and specifically asked her physicians whether the IUD could have been the cause of the injury. At that time, her doctors informed her that they did not know whether the IUD was related to the injury and could not determine the injury's cause. The court therefore found that, under those facts, "[w]hether a reasonably prudent person should have undertaken a further investigation is a matter about which reasonable minds could differ, and it was therefore inappropriate for resolution by summary judgment." 514 A.2d at 4. Based upon the record in this case, no such factual disputes remain. Quillin had no information that contradicted his theory of his injury; in fact, he failed to make any inquiry at all into its cause. He is therefore charged with the knowledge that would have resulted from a reasonable inquiry; and it is undisputed that, as of March 11, 2003, such an inquiry would have revealed sufficient facts to inform him of the existence of a cause of action.

## III.

Quillin also claims infirmities in the district court's disposition of his motion for reconsideration, filed after the grant of summary judgment. We address each of his objections in turn.

18

A.

Quillin first asserts that the district court erred by denying his motion for reconsideration on the basis that he presented new evidence to the court. Fed. R. Civ. P. 59. We review a denial of a motion for reconsideration for abuse of discretion. Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989). New evidence is a ground for reconsideration recognized in this circuit. Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). The standard for granting a Rule 59 motion based on newly discovered evidence is high. The moving party must show:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

Boryan, 884 F.2d at 771 (citing Fed. R. Civ. P. 60).

In this case, Quillin made his motion on the basis of an affidavit filed by Fleet in another proceeding in a different jurisdiction ("the Holzka Affidavit"). The affidavit, submitted by Denise Holzka, who Quillin alleges is "a member of Fleet's national legal team," Appellant's Br. at 6, contains information relating to the date at which Fleet learned of the connection between FPS and nephrocalcinosis. Specifically, the Holzka

19

Affidavit purports to show that Fleet itself had no knowledge of the link between FPS and nephrocalcinosis before 2004, when Dr. Markowitz informed the company of a study he had conducted showing evidence of such a link. Quillin argues that this information meets the standard for new evidence because the Holzka Affidavit demonstrates that no one was aware of the link between FPS and renal problems until 2004, at the earliest. Further, Quillin claims that even if the link had been known, no knowledge of wrongdoing would have been revealed until the 2004 study upon which the information in the Holzka Affidavit is based.

Quillin bore the burden of demonstrating that to the district court that the evidence offered by the Holzka Affidavit met the standard for new evidence.

> [T]o support a motion for reconsideration, the movant is obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing. . . . Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law.

Boryan, 884 F.3d at 771 (quotations and citations omitted). Quillin failed to meet this burden or even to meaningfully address the Boryan standard. He did not show that the Holzka Affidavit contained information not available prior to Fleet's motion for summary judgment. Whether or not nephrocalcinosis is

20

appropriately the diagnosis under consideration,[2] Quillin did not carry his burden to show that the evidence in question could properly be considered. The district court therefore did not abuse its discretion in denying his motion for reconsideration.

B.

Quillin also appeals the district court's denial of his Rule 59 motion on the basis that he was not permitted to take discovery prior to the court ruling on the motion for summary judgment. We review that judgment under an abuse of discretion standard. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002).

Quillin claims that Fleet's rapid filing of its motion for summary judgment, less than two months after all of the defendants had filed their Answers, precluded him from being able to conduct discovery. "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477

---

[2]In their filings, the parties debate at length whether nephrocalcinosis, the diagnosis of kidney problems connected with FPS in the Markowitz study, is properly a subject of this litigation, since Quillin received a different diagnosis. Because we find that Quillin has failed to show that the Holzka Affidavit is new evidence under Boryan, we need not reach this question.

21

U.S. 242, 250 n.5, (1986)). However, Quillin failed to file a Rule 56(f) affidavit before the grant of summary judgment. See Fed. R. Civ. P. 56(f) (providing that the proper procedure is for a party opposing a motion for summary judgment to "show[] by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition"). "[T]he party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." Harrods, 302 F.3d at 244 (quotations and citations omitted). We have repeatedly admonished plaintiffs that

> we 'place great weight on the Rule 56(f) affidavit' and that '"[a] reference to Rule 56(f) and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit."' Evans [v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)] (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)). Indeed, '"the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."' Id.

Harrods, 302 F.3d at 244. Though it may sometimes be appropriate to overturn a grant of summary judgment in the absence of a Rule 56(f) affidavit, see id., in this case we decline to find that the district court abused its discretion in denying Quillin's motion for reconsideration.

22

IV.

For the reasons stated above, the judgment of the district court is

AFFIRMED.